*NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
------------------------------------------------------------X

In re Suzan Roberta Abbott,            Case No. 09-37125
           Chapter 7
         Debtor.

------------------------------------------------------------X

**MEMORANDUM DECISION DENYING DEBTOR'S MOTIONS
FOR STAY PENDING APPEAL AND TO COMPEL PRODUCTION
OF ORIGINAL DOCUMENTS**

A P P E A R A N C E S :

Suzan Roberta Abbott
18 Lester Lane
White Lake, New York 12786
*Pro se* Debtor

Tammy Terrell Benoza, Esq.
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, New York 10977
   -and-
7 Century Drive
Suite 201
Parsippany, New Jersey 07054
*Counsel to Aurora Loan Services, LLC*

Eric J. Small, Esq.
Office of the United States Trustee
74 Chapel Street
Albany, New York 12207

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Five months after the Court granted Aurora Loan Services, LLC ("Aurora" or "Secured Creditor") relief from the automatic stay, the Debtor seeks a stay pending appeal of that order. Between entry of that order and the present moment, Aurora has proceeded with foreclosure activities, and the house has been sold. Further, the Debtor seeks clarification of why this Court did not require Aurora to produce the original note and mortgage documents. The Court rules that Aurora has met its burden of evidence, assignments, and production of documents, under the rules of evidence in federal court

### *Statement of jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G) and (K) because the orders under appeal concern the automatic stay and the validity of Aurora's mortgage lien.[1] Further, a motion for a stay pending appeal must initially be brought in bankruptcy court pursuant to Fed. R. Bankr. P. 8005, and the District Court asked this Court to review the Debtor's allegations.

### *Facts and procedural background*

Debtor commenced her case on August 4, 2009, and received the chapter 7 discharge on November 1, 2009. She is poor, listing just $453 in monthly income on her application to proceed *in forma pauperis*. On that application, Debtor

---

[1] It can be argued that the Court does not have jurisdiction over this matter. The Court will rule as if it has jurisdiction; both parties have filed motions and other papers in this case to cause the Court to address this matter. As discussed herein, secured creditors commonly seek "comfort orders" from the bankruptcy court, even though it is apparent that the stay is not in effect.

indicates that she expects her income to increase due to sales commissions that she will earn as an independent distributor for a company called Life Vantage.

Debtor is a repeat filer. Her previous case was dismissed pursuant to the motion of the chapter 13 trustee and closed on June 4, 2009.

It is unclear whether Debtor perceived that there was equity in her house when she commenced the present case. On her schedules, she indicates that she owes $242,000, and that the amount of the secured claim is $220,000. She lists a debt owed to Aurora Loan Services, in the amount of $242,400, which she checks as "disputed."

***Debtor's stay expired on September 3, 2009, due to her status as a repeat filer.*** As discussed herein, even if the automatic stay had been in effect, it would have expired pursuant to the terms of the Bankruptcy Code when Debtor received her discharge on November 1, 2009.

Early in her case, Debtor submitted a letter, which the Court and Clerk's Office treated as a motion to sell her house according to Bankruptcy Code § 363(b). It seemed that she was trying to achieve a short sale of her house to a young, expecting couple, for $195,000. In a letter dated August 31, 2009, Secured Creditor objected to the possible sale of the debtor's property in the amount of $195,000 which would be inadequate to satisfy the debt secured by the house. Debtor's motion to sell was denied.

Counsel to Aurora filed a motion for relief from the stay on September 2, 2009, in which it alleged that the fair market value of the property was $265,000, and that Debtor owed $281,000. The motion was deficient as it appeared on CM/ECF, in that it failed to annex copies of the note and mortgage. Debtor objected, and moved for production of the original note and mortgage, as well as "verification and full accounting." Counsel to Aurora subsequently filed several

documents on CM/ECF, including the note, mortgage, and proof of standing, and affirmed that the copies were served with the original motion on the Debtor.

The Court granted the motion for relief from stay by Order dated September 23, 2009. The Court denied Debtor's motions to sell and extend the stay by Order dated September 28, 2009.[2] Debtor appealed the lift-stay order, and the Court assumes that in her appeal Debtor argues that the orders denying her motion to sell, for discovery, and a stay were in error. Debtor's discovery demands do not appear to have been addressed or disposed of on the record.

Debtor received the chapter 7 discharge on November 1, 2009.

On March 9, 2010, five months after she filed her appeal, Debtor moved this Court for a stay pending appeal. She alleges that she had a hearing in district court, and the judge there told her that she must get clarification from this Court "as to why this Court did not compel Aurora Loan Services, LLC., to produce the Original Note for judicial and forensic scrutiny to verify that Aurora Loan Services, LLC., had in law, legal standing to assert it held the Original Note and therefore was a creditor." By Order dated March 12, 2010, the Court imposed a temporary stay as to all creditors, pending the hearing on April 7, 2010.

In opposition to the motion for a stay pending appeal, Ms. Terrell-Benoza, counsel to Aurora, affirms that Debtor was instructed by the district court to demonstrate "that the original note should have been produced at the hearing for the motion for relief; that debtor will suffer injury if the stay is denied; that there will be no harm to others if the stay is granted and debtor has a likelihood of

---

[2] As discussed herein, in the cases of repeat filers, the automatic stay expires automatically within 30 days of filing the present case. Debtors may move to extend the stay, and the hearing on that motion must be held and concluded within 30 days of the filing date. It may be granted upon a showing of clear and convincing evidence of changed circumstances that would cause the Court to conclude that the debtor would obtain a chapter 7 discharge or confirm a chapter 13 plan. Debtor failed to make a timely motion to extend the stay, the stay expired, and the Court advised the Debtor at a hearing on September 22, 2009, that the automatic stay had expired. Debtor made an oral motion to impose the stay on the record, which the Court denied.

success on the merits." All of these factors other than the first represent the criteria an appellant must meet to obtain a stay pending appeal. *See In re Calpine Corp.*, 2008 Bankr. LEXIS 217 (January 24, 2008 Bankr. S.D.N.Y.); *In re Saunders*, 1985 WL 2747 (S.D.N.Y. Sept. 24, 1985) (standard for stay pending appeal is similar to that of a preliminary injunction; district court denied motion for stay pending appeal because debtors failed to show that there was any likelihood of success on the merits upon appeal).

The Court rules: 1. a copy, filed according to the rules of evidence, was produced in support of the lift-stay motion; 2. Debtor will not suffer any injury if the stay is denied, in fact she tried a short sale, indicating that she was willing to give up the property; 3. there is harm to others if the stay is granted; and 4. Debtor has no likelihood of success on the merits.

In her opposition, Ms. Terrell-Benoza informs the Court that the house was sold at foreclosure on December 11, 2009. Therefore, the Court asks what is the point of obtaining a stay pending appeal. There is nothing left to stay – the foreclosure sale has been held, which extinguishes the Debtor's rights in the house.

As of September 3, 2009, when the Debtor's stay expired pursuant to the terms of the Bankruptcy Code, the question regarding the standing of the secured creditor became a state-court issue.

The Court held a hearing pursuant to the direction of the district court on April 7; counsel to the Secured Creditor did not have the last page of the note on hand, which was key to addressing the standing question, and the Court adjourned the hearing to allow for production of the page. The note, complete with the missing page, was filed on CM/ECF on April 12, 2010, and shows Debtor's signature, and two stamps. At the hearing on April 28, 2010, counsel advised the Court that the document is called an endorsed note. The Court noted that the account numbers were properly blacked out on ECF, for protection of Debtor's

privacy; counsel had an unredacted copy for the Court's review. Counsel advised the Court of the meaning of the stamps: "After the note was executed, there was an endorsement. The endorsement went from Lehman Brothers Bank, FSB, to Lehman Brothers Holding. And that's the first endorsement that you see. Then there's an endorsement in blank, from Lehman Brothers Holding, Inc. And that is the second endorsement that you see. And that is what you see when you have foreclosures, they want it endorsed in blank." The Court deemed the copy admissible for purposes of the Federal Rules of Evidence, having cited earlier Fed. R. Evid. 1003.

Debtor said that according to her research, she could see a page with the signature in blue ink, to show it was an original; otherwise, all the page proved was that the creditor's counsel, and presumably the movant, had access to a photocopier. The Court noted the objection, and said that for purposes of the Court, the copy was prima facie evidence. Debtor inquired whether the note was supposed to be attached to a deed of trust; it is not for the Court to answer Debtor's question. Debtor again objected to the evidence, and the Court overruled the objection as being without basis.

### *Principles of bankruptcy*

When a debtor files a petition for bankruptcy relief, an estate is created. 11 U.S.C. § 541(a). The estate is comprised of all of a debtor's legal or equitable interests in property, including causes of action. *See id.* Debtors are entitled to exempt certain assets from the estate. In New York, a chapter 7 debtor may take a limited cash exemption or a homestead exemption of the first $50,000 in equity after first mortgages are satisfied. N.Y. C.P.L.R. § 5206.

In chapter 7 cases, a trustee is appointed to administer the debtor's case, by collecting the property of the estate, reducing it to cash, and distributing the

proceeds to creditors.  11 U.S.C. §§ 701, 702, 704.  The trustee might perform this duty by prosecuting a lawsuit or selling an asset.

Upon the filing of the petition, the automatic stay arises.  § 362(a).  The automatic stay is a phenomenon in law, a broad injunction that stops efforts to collect pre-petition debts.  *Id.*  The automatic stay does not stop every act, for example certain criminal or family law matters, but these exceptions are not relevant in the case at bar.  *See* § 362(b).  For most debtors, the practical effect of the stay is that the collections calls and garnishments stop, and the foreclosure proceeding or sale is stayed.

In the Bankruptcy Abuse Prevention and Consumer Protection Act, which became effective in October 2005, Congress enacted several changes to the Bankruptcy Code, most of which affect consumer debtors.  Among these changes was a new provision, § 362(c)(3), that provides that the stay terminates 30 days after filing when the debtor had a previous case pending within the previous year – the most recent case is presumed not to have been filed in good faith.  **_That is what the law states._**  The provision was designed to combat the acts of "serial filers," who file petitions to stop foreclosure, without reasonable prospects of financial rehabilitation.  Debtors may extend the stay upon a showing of clear and convincing evidence of good faith in filing the second case, such as changed circumstances that will permit the debtor to obtain a discharge.  § 362(c)(3).  This extension must be made upon notice and a hearing, completed before the expiration of the 30-day period.  *Id.*  **_This was not done in the case at bar.  As of September 3, 2009, there was no stay in effect and the Secured Creditor had the right to proceed in state court._**

In chapter 7 cases of individual, consumer debtors, the stay terminates upon the earliest of the following events: the case is closed, the case is dismissed, or the

discharge is granted. § 362(c)(2). **<u>On November 1, 2009, this Debtor received the discharge; therefore, the stay terminated.</u>**

Given the stiff penalties for violations of the automatic stay, it is common practice for creditors to seek relief from the stay even in the cases of repeat filers, or at least to apply for a "comfort order" confirming the absence of the stay pursuant to § 362(j) – this seems to have been done in the case at bar. In chapter 7 cases, creditors will often move for relief from the stay where there is no equity in the property and there is a substantial pre-petition default, even though the stay usually will expire automatically a few months after the case is commenced, when the debtor receives her discharge.

On a motion for relief from stay, the debtor bears the burden of proof on all issues other than the debtor's equity in property. § 362(g).

In bankruptcy, discovery is carefully structured by federal rules to prevent waste, unfair surprise, confusion, and depletion of estate assets. Discovery in the lead bankruptcy case must be made pursuant to Fed. R. Bankr. P. 2004, where a party in interest may make an application to the bankruptcy court to examine any entity. This discovery is broad, but must relate to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

The bankruptcy court has jurisdiction over certain kinds of lawsuits related to the bankruptcy, called adversary proceedings, which are listed in Fed. R. Bankr. P. 7001. Among the kinds of adversary proceedings are proceedings to determine the validity of a lien or other interest in property. The Federal Rules of Bankruptcy Procedure generally incorporate the rules set out in the Federal Rules of Civil Procedure, including rules governing discovery. *See* Fed. R. Bankr. P. 7002-7071. When a motion is opposed in the lead case, it is characterized as a contested

matter, and discovery generally takes place pursuant to the Federal Rules of Civil Procedure, as incorporated by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 9014. In both adversary proceedings and contested matters, the parties must enter a scheduling order to set a time frame for discovery, motions for summary judgment, and evidentiary hearings and trials.

### *Debtor's motion for a stay pending appeal*

Debtor seeks a stay pending appeal, five months after the orders were entered denying her requests for relief. In the interim, Debtor has received her chapter 7 discharge, and the foreclosure sale has been held and concluded. The Court unequivocally denies Debtor's motion to compel production of original documents, even though this motion was denied by virtue of granting Aurora's motion for relief from the stay. Debtor's motion for a stay pending appeal is denied for the reasons cited herein, especially Debtor's failure to show that she will succeed on the merits of her appeal.

**1. The creditor did not need to produce the original note and mortgage at the lift-stay hearing.**

If the Court has been unclear at any time that the Debtor's motion to compel was denied, then the Court takes this opportunity to expressly deny the motion.

Fed. R. Evid. 1003 provides, "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." If in fact either of these two showings were to be made, it must have been done in the context of an adversary proceeding. No adversary proceeding was brought in the case at bar, and the time to do so has expired.

Nothing in the Bankruptcy Code or rules of procedure requires production of original documents. For example, the worksheet that is submitted with motions for

relief from stay expressly provides that the movant is required to produce "***copies*** of documents that indicate Movant's interest in the subject property." Similarly, Fed. R. Bankr. P. 3001(c) provides that when a claim is based on a writing, the original ***OR*** a duplicate shall be filed with the proof of claim. Official Form B 10, a proof of claim, requires creditors to "Attach redacted ***copies*** of any documents that support the claim, such as promissory notes …"[3]  The redactions are necessary to protect the privacy of the debtors.

Similarly, in bankruptcy, proofs of claim are prima facie valid. Fed. R. Bankr. P. 3001(f). It is for the debtor to present evidence to rebut the claim. As stated above, on a motion for relief from stay, the debtor bears the burden of proof on all issues other than the debtor's equity in property. Bankruptcy Code § 362(g).

In the case at bar, counsel to Aurora served the copies of the note and mortgage on the Debtor, and filed them on CM/ECF. Even if the Court were to disregard Debtor's failure to seek discovery pursuant to Fed. R. Bankr. P. 2004, Debtor did not argue to the Court why it should grant her motion for production of documents, and the Court never issued an order granting the motion to compel the documents. Debtor failed to comply with Fed. R. Bankr. P. 2004 in her quest for discovery, and failed to otherwise prosecute her request for production of original documents. Any deficiencies in the supporting documents that were filed have been cured by subsequent filings and counsel's representations to the Court at the hearing on April 28, 2010.

No genuine issue has been raised with respect to the authenticity of the copies of the loan documents. Copies are acceptable in most circumstances in bankruptcy. Debtor's attempt to obtain the original documents was procedurally irregular, and at this point, only for the purposes of delay. As discussed herein, the

---

[3] In fact, creditors are warned in capital letters NOT to send original documents, because documents may be destroyed after scanning.

matter is now moot due to Debtor's discharge and the foreclosure sale. For all the foregoing reasons, Debtor's motion is denied.[4]

In the case at bar, Aurora filed a motion for relief from stay. While the motion filed on ECF omitted the supporting documents, this deficiency was cured after Debtor moved to compel production of original documents; at a hearing, counsel to Aurora advised the Court that copies of the supporting documents were served with the original motion. Debtor's motion for discovery appears to have been a response to the lift-stay motion. Such a response improperly shifted the burden of proof to the creditor, and Debtor has never argued why a duplicate note and mortgage is not sufficient proof of Aurora's standing. Finally, counsel to Aurora filed a copy of the endorsed note on April 12, 2010, and explained its meaning to the satisfaction of the Court at the hearing on April 28, 2010. Debtor's motion to compel is denied, if it had not been denied before by the granting of the lift-stay motion.

If Debtor wanted to attack the validity of Aurora's interest in her house or standing to move for relief from the stay, she should have commenced an adversary proceeding, or at least opposed the motion by asserting some facts to support a defense. This would have caused the parties to proceed with discovery in an orderly manner. These procedural mechanisms require the applicant to give some basis for requesting relief and seeking production of information, which

---

[4] The Court's ruling is consistent with New York state courts' rulings on similar requests for relief, such as in *U.S. Bank, N.A. v. Flynn*, --- N.Y.S.2d ---, 2010 WL 936224 (Sup. Ct. Suffolk County, March 12, 2010), in which the court granted summary judgment in favor of the bank in its effort to foreclose on a house. The court stated, "It is well established that a plaintiff who seeks summary judgment on its claims for foreclosure and sale establishes a prima facie case for such relief by production of copies of the mortgage, the unpaid note and evidence of a default under the terms thereof"). *Id.* at *1. Upon such showing, the burden shifts to the defendant to rebut the prima facie showing.

Debtor has failed to do.  *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (2009) ("[Fed. R. Civ. P.] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  Instead, Debtor filed a motion to produce original documents, wanting a "blue ink" signature, without stating why originals should be produced and why copies were not sufficient.

Debtor did not commence an adversary proceeding to determine the validity of Aurora's mortgage lien, and therefore Debtor's appeal of the lift-stay motion was rendered moot by the issuance of the discharge, which caused the automatic stay to terminate.

Debtor asserts that she is entitled to an equitable accounting.  She has failed to plead facts necessary for such dramatic equitable relief.  "The necessary prerequisite to the right to maintain a suit for an equitable accounting … [is] the absence of an adequate remedy at law.  Consequently, in order to maintain such a suit on a cause of action cognizable at law, … the plaintiff must be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).  The request for an accounting is mooted by the discharge and foreclosure sale; at most, Debtor might have been able to request a payment history.

**2. The debtor will not suffer injury if the stay is denied.**

The stay has terminated at least three times in this case.  It expired on September 3, 2009, automatically pursuant to the terms of Bankruptcy Code § 362(c)(3); Aurora successfully obtained relief from the stay, by motion pursuant to Bankruptcy Code §§ 362(d) and 362(j); and the stay terminated upon the Debtor receiving a discharge pursuant to § 362(c)(2)(C).  The house has been sold at

foreclosure. Debtor has received fair consideration. As a result of her receiving her discharge, the debt secured by the home may not be collected from the Debtor. Any rights she might have had in the property were extinguished by the sale. It has never made any practical difference to the Debtor whether the house is transferred away from her via short sale or foreclosure. The short sale is moot now after the foreclosure, and the Debtor's obligation on the home loan is extinguished. There is no harm to the Debtor.

### 3. There will be harm to others if the stay is granted.

Counsel to Aurora advises the Court the two foreclosure sales were stayed by the Debtor's repeat filings, and that the house was finally sold at foreclosure to the lender on December 11, 2009. The lender has made a *prima facie* showing of legal rights in the house by its presentment of the copies of the note and mortgage, and will be harmed by further delay in disposing of its property. The Court notes that the foreclosure sale has been held and concluded, which suggests that Debtor either failed to defend the foreclosure, or that the arguments made against Aurora were rejected by the New York state court.

### 4. Debtor does not have a likelihood of success on the merits.

On September 3, 2009, thirty days after she commenced her case, by operation of law as a consequence of her being a repeat filer, Debtor's stay expired pursuant to Bankruptcy Code § 362(c)(3). Aurora moved for relief from the stay with respect to its interest in Debtor's house by filing a motion on September 2, 2009, which was granted by Order dated September 22, 2009. Even if the automatic stay had remained in effect despite Debtor's repeat status and if the motion for relief from stay had been denied, the stay would have terminated when the Debtor received her discharge on November 1, 2009. *See* 11 U.S.C. § 362(c)(2) (stay terminates upon earlier of closing of case, dismissal of case, or granting or denial of discharge). The stay terminated at three different points in

this case.  The foreclosure sale was held a month later, on December 11, 2009.  As noted above, Debtor did not commence an adversary proceeding to determine the validity of Aurora's mortgage lien, and therefore Debtor's appeal of the lift-stay motion was rendered moot by the issuance of the discharge, which caused the automatic stay to terminate.  Even if granting the motion for relief from stay was error, which it was not, the stay expired pursuant to the terms of the Bankruptcy Code before the foreclosure sale.

Regarding the motion to sell, Bankruptcy Code § 363(f) provides that if property of the estate is to be sold free and clear of liens, the lienholder must consent to the sale, or the sale price must satisfy all liens on the property.  Here, the Debtor proposed a short sale, to which the creditor did not consent.  The Court's denial of the short sale was proper pursuant to Bankruptcy Code § 363(f).

There is no possibility of success on the merits.  The entire matter is moot pursuant to Aurora's proper reliance on the bankruptcy law – the automatic expiration of the stay and the discharge – and this Court's lift-stay order.  The Court follows *Pappas v. International Minerals and Resources, S.A. (In re Pappas)*, 215 B.R. 646 (2d Cir. B.A.P. 1998), in which the appellate court dismissed an appeal as moot where the creditors took action as allowed by the order from which the debtor appealed.  In *Pappas*, the bankruptcy court extended the time for creditors to file complaints regarding the dischargeability of debt.  The debtor appealed this interlocutory order, and failed to obtain a stay pending appeal.  While the appeal was pending, the creditors filed their complaints.

The appellate court raised the issue of mootness of the appeal, stating the rule that an appeal is moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.  *Pappas*, 215 B.R. at 649.  The court noted that there was no stay pending appeal, and therefore the creditor was entitled to rely on the extension order as a final order, and did so rely.

*Id.* at 650.  The court concluded, "[A] remand would be terribly contrived, and, in this Panel's view, inequitable under the Second Circuit caselaw …" *Id.* at 651.

The Court relies on *Pappas* to support the proposition that, where an appeal is almost certainly moot, Debtor has not shown possibility of success on the merits. Debtor filed a chapter 7 case, and had no assets and no equity in the house. Therefore, she had no interest in the house after the case was commenced, because chapter 7 debtors generally do not have an interest in property of the estate after the case is commenced, other than their homestead exemption for $50,000 in equity after first mortgages are satisfied.  By seeking a short sale, a process for selling property for less than what is owed on it, Debtor admitted that there was no equity in the property.

Further, the foreclosure sale has been held and concluded, extinguishing Debtor's rights in the property, all in Aurora's proper reliance on this Court's order granting it relief from the stay.  No stay of the Court's September Orders was sought, and Aurora properly relied on them as final orders, in proceeding with its foreclosure sale.  The creditor in *Pappas* properly relied on the bankruptcy court's extension order and filed its complaint; the creditor in the case at bar properly relied on this Court's order lifting the stay in proceeding with foreclosure. "Bankruptcy courts have uniformly held that, under New York mortgage foreclosure law, a debtor's right of redemption of, and interest in, the property is extinguished by a foreclosure auction, not by the subsequent delivery of the deed." *In re Sands*, 328 B.R. 614, 616 (Bankr. N.D.N.Y. 2005) (home was not property of the estate where debtor electronically filed the petition minutes after the foreclosure sale was completed).

### *Conclusion*

Therefore, for the foregoing reasons, including that Debtor has not demonstrated a likelihood of success on the merits and the authority of *Pappas*, Debtor's motion for a stay pending appeal is denied. Debtor's motion to compel production of original documents is denied.

Dated:   May 4, 2010
          Poughkeepsie, New York

/s/ Cecelia Morris
U.S. Bankruptcy Judge